

FILED

JAN 30 2014

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA,
<u>EX REL.</u>

SAMPSON O. MGBAJA
6928 Mayfair Road
Laurel, MD 20707

      Plaintiff,

  v.

AMERICAN SECURITY PROGRAMS, INC.

      Defendant.

Case: 1:14-cv-00130
Assigned To : Jackson, Ketanji Brown
Assign. Date : 1/30/2014
Description: General Civil

SEALED

Civ. No.
UNDER SEAL

## <u>COMPLAINT</u>

<u>Introduction</u>:

    1.  Plaintiff brings this action under the False Claims Act, 31 U.S.C. Sec. 3730(b)
(2) and (h)(1) and (2) .  Plaintiff contends that Defendant is regularly turning in false time
entries on Form 139s to Homeland Security in order to claim pay for relief guards even
though the guards are not providing relief to the employees who initial that they received
the relief. By so doing, Defendant is claiming pay for having sufficient relief guards on
staff to perform relief functions when either the function is not performed at all or is
being performed by others who Defendant is claiming separate pay for in another job
capacity—either as supervisor or roving officer.   Plaintiff also contends that he was
terminated after he reported serious federal contract violations to FPS and false time
entries to management at the site that he was working as a security guard, at the National

2

Cancer Institute, Rockville, MD.  After his termination, Plaintiff learned that the practice of false entries continued and increased.

## JURISDICTION AND VENUE

2.  This claim arises under the False Claims Act, 31 U.S.C. Sec. 3130 *et al*.  This Court has jurisdiction pursuant to 31 U.S.C. Sec. 3732 (a) and 28 U.S.C. Sec. 1345.

3.  This Court has personal jurisdiction over the defendant, American Security Programs, Inc. because it submitted false claims to the government in and from the District of Columbia, involving contracts that it has with the federal government in the District and Maryland.

4.  Venue is proper in this district under 28 U.S.C. Sec. 1391(b)(3) because Defendant transacts business within the District of Columbia and many of the acts proscribed by the False Claims Act occurred within this district.

## THE PARTIES

5.  Plaintiff is a resident of Laurel, Maryland.  He worked as a security guard for Defendant American Security Programs, Inc. from September 12, 2012 through July 3, 2013 when he was terminated.

6.  Defendant, American Securities Programs, Inc. (hereafter ASP or Defendant) is a corporation with headquarters in Dulles, VA.  ASP has contracts with the federal government to provide security services to several buildings in the DC metropolitan area, including at the NCI site in Rockville, MD where Plaintiff was employed.

## FACTS

7.  Plaintiff was employed with Defendant, American Security Programs, Inc. on September 18, 2012 as a security guard.   He was assigned to work at the National Cancer Institute in Rockville, MD at various posts which were assigned to him by Defendant.

8.  Plaintiff performed his job duties well and passed his probationary period.

9.  In the early morning hours of April 26, 2013, Plaintiff telephonically notified FPS (Operator #26) that Sgt. Robinson had taken a loaded weapon home with him in blatant violation of Security Guard Information Manual, which is incorporated into the NCI contract.   Plaintiff made this complaint anonymously and did not give his name to the operator.

10.  On April 30, 2013, Plaintiff attempted to talk to Mark Phinney, Vice President of American Security Programs, during a break in a meeting between management and the union, about the weapon that was taken home by Sgt. Robinson. Plaintiff was acting as shop steward at the union management meeting. Mr. Phinney responded that he knew all about it and did not want to discuss it with Plaintiff.

11.  On May 7, 2013, Plaintiff observed several guards, including two supervisors, eating pizzas in the Command Center at a time they were supposed to be on their posts and were falsely claiming on their 139 forms that they were covering their post during this time.   Plaintiff reported this serious lapse of post discipline  to Lt Sands and Major Ed Moore, who was over Lt Sands.

12. On May 21, 2013 Plaintiff complained to his immediate supervisor, Sgt Kerry Flemming, that the relief guard (Officer Jeannette Mouyin) abandoned Plaintiff's post

after putting him on break and falsely completed the Form 139 that she was at the post

throughout the entire break, when in fact Plaintiff returned early from break but Officer

Mouyin had already left the post.

12. On May 22, 2013, Plaintiff complained to Sgt Tyvon Barr about the same

issue concerning Officer Mouyin abandoning post the day before and other prior

occasions when she did the same thing and yet falsely claimed the time on the Form 139.

13. On May 30, 2013, Plaintiff observed Sgt Flemming authorizing bar code

temporary authorizations for contract employees working on site without properly vetting

them first.  After telling Sgt Flemming that he would report the incident to Lt. Sands, Sgt

Flemming told him he would write Plaintiff up for insubordination and have the company

fire him if he reported the incident to Lt Sands.   Later that day Plaintiff noted that

Officer Mouyin abandoned a coworker's post that she was responsible for relieving and

again falsely reported the time on the Form 139.  Plaintiff reported both Sgt Flemming

and Officer Mouyin's improper conduct to Lt. Douglas Sands and also reported that

Officer Mouyin was claiming to relieve two officers at the same time in order to make up

for her regularly reporting late for work.  By claiming to relieve two officers at the same

time, she was actually falsely reporting that she was covering two separate posts at the

same time, when in fact one of the posts was not covered at all.  Homeland Security was

paying for two posts being relieved, even though Officer Mouyin was only relieving one

of the posts.

14. On June 17, 2013, Plaintiff again called FPS anonymously to report that the

NCI master key for the site was taken home by Sgt. McCain in violation of the Security

Guard Information Manual.  On June 18, 2013, Plaintiff further sent an email to site

manager, Lt. Douglas Sands, about the key being taken home by Sgt. McCain.   Lt. Sands
did not respond to the email.

15.  On June 20, 2013, Plaintiff called his site supervisor, Lt. Sands, and
questioned him about why he was issued a Corrective Action Report (CAR) for coming
in late on June 19, 2013 since Plaintiff had called in to report that he was delayed at
corporate headquarters and would be late for the start of his shift.  Lt. Sands asked
Plaintiff whether something was going on between him and the corporate office and
whether he was having problems with Project Manager Ed Moore and Vice President
Mark Phinney, because 'he had been instructed by Ed Moore and Mark Phinney to be
nitpicking on Plaintiff and to try to find whatever possible that he could on Plaintiff to
write him up.  Lt. Sands urged plaintiff to be careful.

16. On June 20, 2013 Sgt. Barr told plaintiff that ASP management believed that
Plaintiff was the one who contacted FPS anonymously on two occasions, and reported
incidents that had to do with Sgt. Robinson taking a loaded weapon home on April 25,
2013, and Sgt. McCain taken NCI building master keys home overnight on June 17,
2013.   He too cautioned Plaintiff to be careful.

17. On June 20, 2013 Plaintiff informed his site supervisor, Lt. Sands, that he
was going to start documenting certain violations including: falsification of the 139
Form because officers were not being given breaks and Defendant still billed the United
States Government for providing the break.  Plaintiff told Lt. Sands that it was obvious
that someone was falsely claiming time worked to cover the break that had not been
worked. Plaintiff also told Lt. Sands that he observed and documented supervisors
coming to  work late and out of uniform on different occasions and yet he was sure that

they were signing off on the Form 139 as arriving on time and in uniform.  Later that day,

Defendant prepared a 3 day suspension for Plaintiff, which they issued to him on 6/26/13.

18.   Defendant falsely claimed that part of the reason they were issuing Plaintiff

the 3-day suspension was because "Mgbaja used an electronic device while on post while

signed in on the site 139 Government sheets"  Although Plaintiff showed management

that he actually sent the complaint which was referred to from his home and not during

work time, Defendant would not reconsider the suspension.

19. On July 3, 2013 plaintiff was terminated by American Security programs Vice

President, Mark Phinney, for violation of SGIM section 2.5.  Phinney claimed to have

observed Claimant leaving the Command Center with a small carry-on bag and taking it

to his post. Phinney falsely claimed that Plaintiff took the bag to his post in violation of

company policy.  However,  Plaintiff had not taken the bag to his post, but stored the bag

in an adjacent room locker which he had obtained permission to use because he needed

close access to medicine that he needed to take periodically throughout the day.   Phinney

also claimed that Plaintiff violated the Defendant's client telephone use policy by calling

him to complain about being written up over the backpack issue.  However, Plaintiff did

not use the phone improperly since he was calling for official business relating to the

writeup.   Both alleged violations were pretextual.

17.   Defendant's termination of Plaintiff was motivated by Plaintiff's reports to

Defendant of false time entries, contract violations and his threat to report future false

claims relating to Defendant falsifying time on the 139 form, which is used by Defendant

for documenting time they are claiming reimbursement for from the U.S. Government.

18.  Defendant's termination of Plaintiff resulted in Plaintiff suffering financial losses from the income that he earned in this job.   To date, Plaintiff has still not been able to find other employment to replace the financial losses that he suffered from the loss of this position.   Plaintiff further suffered compensatory damages from the pain suffering and humiliation of being terminated.

19.  Since Plaintiff's termination, Plaintiff learned that Defendant's agents have increased their submission of false 139 entries, claiming time worked by employees when the time was not actually worked, in order to be paid for the false time entries.


## CLAIMS

**I.   Defendant Violated 31 U.S.C. Sec. 3729(a)(1) by Presenting False Claims for Payment to the U.S. Government**

20.  Plaintiff incorporates by reference paragraphs 1 through 19 above.

21.  Defendant knowingly submits false time entries to the federal government for payment relating to the following specifics:

a. Claiming that break guards are covering breaks for guards when in fact roving guards or supervisors are covering the breaks for these guards.  When Defendant is short staffed on a shift, Defendant agents  will  have the break guard go around and have officers initial the break sheets (form 139 R) , even though the break guard did not provide the break, thereby claiming extra time on the Form 139 not actually worked by break guards.

b.  On other occasions Defendant will ask security guards to initial that they are being provided a break, and are provided a break, even though the individual whose name

appears as the break guard did not provide the break.  This allows Defendant to claim time for break guards even though others are providing the break and the person listed on the Form 139 as providing the break did not provide the break.

     c. On other occasions Defendant's agents will instruct guards to initial that they were provided breaks "to make the books look good" even though they were not provided the break, thereby claiming money for break guards time that was not actually spent and avoid being fined by the federal government for not having sufficient staffing to cover posts.

     d. On still other occasions, Defendant's agents will write in the names of officers as covering breaks even though the officer did not work the shift at all.

     22.  These and other practices are engaged in repeatedly by Defendant's current management with the intent of presenting false claims for payment.

## II.  Defendant Violated 31 U.S.C. Sec. 3729(h)(1) by Terminating Plaintiff For Reporting False Claims

     23.  Plaintiff incorporates paragraphs 1 through 22 above.

     24.  Defendant's termination of Plaintiff on July 3, 2013 was motivated by his having reported false time entries and other contract breaches to management in order to prevent Defendant from claiming monies from the federal government that they were not entitled to.

     25.  All of Plaintiff's actions in reporting such contract violations to FPS and reporting inaccurate time entries to management were done for the purpose of preventing false information and claims being made to the federal government and were lawful.

26.  Defendant retaliated against Plaintiff by terminating him for having made the lawful reports in violation of 31 U.S.C. Sec. 3729(h)(1).

## RELIEF REQUESTED

1.  Plaintiff seeks to be reinstated with full seniority and made whole for all losses he suffered because of Defendant's retaliatory termination of him;

2.  Plaintiff seeks double compensation for the losses he suffered because of Defendant's retaliatory termination pursuant to 31 USC Sec. 3729(h)(2).

3.  Plaintiff seeks to have his record cleared of all false allegations and discipline motivated by retaliation.

4.  Plaintiff seeks reasonable attorney's fees and costs in having to pursue his rights to be free of retaliation through this litigation.

5. Plaintiff seeks pre and post judgment interest on the monies found to be due him because of Defendant's retaliatory termination.

6.  Plaintiff seeks any and all other relief that are available to him in order to make him whole from the retaliatory actions taken against him by Defendant.

## REQUEST FOR JURY TRIAL

Plaintiff hereby requests a jury trial regarding all issues that he is entitled to a jury trial under law.

Respectfully submitted,

James L Kestell   DC 955310
Kestell & Associates
254 N. Washington St.
Tel.: 703-237-2912
Fax: 703-237-4321
jimkestell@gmail.com

9